**Robert S. CALVERT, Comptroller of Public Accounts of the State of Texas, Appellant,**

**v.**

**HARRIS COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NO. 58, Appellee.**

**No. 11073.**

Court of Civil Appeals of Texas.

Austin.

June 5, 1963.

Rehearing Denied June 26, 1963.

Waggoner Carr, Atty. Gen., J. H. Broadhurst, Asst. Atty. Gen., Austin, for appellant.

Burford, Ryburn & Ford, Spencer C. Relyea III, Dallas, for appellee.

HUGHES, Justice.

This suit was brought by Harris County Water Control and Improvement District No. 58, Appellee, against Robert S. Calvert, Comptroller of Public Accounts of Texas for the purpose of obtaining a judgment declaring whether or not the District "is legally liable to pay, and Comptroller is legally

authorized to demand, collect and receive from District an occupation tax levied by Acts 1959, 56th Leg. 3rd Cd.Sess., p. 187, Ch. 1, (Art. 11.03, Ch. 11, Title 122A, Taxation-General, Vol. 20A, Vernon's Ann.Civ. St.) on gross receipts of the District for water sold to its customers on and after January 1, 1957.

The District alleged that the Comptroller was "attempting to assess and collect an occupational tax on its gross receipts within the City of Houston and in doing so is acting wrongfully, without legal authority and without authority of law. * * *"

 In view of the nature of the suit and the allegations made by appellee, above noticed, we overrule the contention made by the Comptroller that this is a suit against the State of Texas, brought without legislative consent. Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837.

The case was tried principally on stipulations, the pertinent provisions of which we quote or state.

Harris County Water Control and Improvement District No. 58 is a governmental agency and body politic of the State of Texas. It was organized December 15, 1955, by order of the State Board of Water Engineers under authority of Article 16, Sec. 59 of the Constitution of Texas, Vernon's Ann.St., and Arts. 7880–1 through Arts. 7880–147Z1, Ch. 3A, Title 128, Vol. 21, V.T.C.S.

The corporate boundaries of the District embrace 704 acres of land, outside of, but adjacent to the city limits of Baytown in Harris County. This District, within its geographic boundaries, conducted the business of producing and selling water through its own separate system to residential homes therein located.

The so-called North Houston System is a water system located twenty-two miles from the nearest boundary of the Harris County Water Control and Improvement District. The North Houston system was privately and formerly owned by Charles E. McArthur of Kansas City, Missouri, C. F. Alexander of Fort Worth, Texas, and Hilding F. Henrickson of Chicago, Illinois. This system was located outside of, but adjacent to the City of Houston in Harris County. It produced and sold water to residents of the surrounding community, but not in the City of Houston.

After the City of Houston had commenced proceedings to annex a substantial portion (%10) of the privately owned North Houston Water System, including its wells and production facilities, its owners formed a corporation, the Lone Star Water Company, for the purpose of taking title to the North Houston System.

In accordance with the terms of a "Gift Proposal", which proposal is not in the record, the owners of the North Houston System on December 19, 1956, conveyed it to the Lone Star Company in consideration of a promissory note in the sum of $1,250,-000.00 executed by Lone Star and payable to the three former owners of the North Houston System, and secured by a deed of trust on the property conveyed. The rate of interest this note bears is not shown.

On December 28, 1956, the Lone Star Water Company conveyed the North Houston System to Appellee District, subject to the indebtedness of $1,250,000.00 owing the three former owners and the deed of trust securing it.

The City of Houston annexed substantially all of the North Houston System, above described, on December 31, 1956.

The following quotations are taken from the stipulation:

"The Gift Proposal, and all transactions incident thereto, was conditioned upon rulings by the Treasury Department of the United States that: (1) the proposed operations of the Water System would be exempt from tax, (2) that the interest on installment obligations of Lone Star Water Co., repre-

senting the purchase price to be paid by Lone Star Water Co. to the individuals for the Water System in question, would be exempt from tax, and (3) that the individual owners would be required to report as capital gain only that proportion of such installment payments actually received each year, which the gross profit, realized or to be realized when payment was completed, would bear to the total contract price pursuant to Section 453 of the Internal Revenue Code.

"5.

"The District on September 18, 1956 by instrument identified herein as Exhibit 4, made its request for ruling to the Commissioner of Internal Revenue, Washington, D. C.

"6.

"Such request was based, among other authorities, on the decision by the United States Court of Appeals for the Eighth Circuit in Keokuk & Hamilton Bridge, Inc. v. Commissioner of Internal Revenue, 180 F.2d 58.

"7.

"By letter dated December 21, 1956, identified herein as Exhibit 5, addressed to Mr. Bert L. Klooster, attorney for the District, the office of Commissioner of Internal Revenue, in reply to such request, ruled favorably to the District and to the individual owners, regarding the tax exemptions and other matters contained in such Request.

"8.

"Pursuant to the provisions of Sec. 2 of the said Gift Proposal, C. F. Alexander, Charles E. McArthur and Hilding F. Henrickson, the former owners of the water system in question, entered into an agreement with Jerry H. Birdwell, Sr., Trustee, dated December 21, 1956, designated as Trust Agreement and Declaration of Trust, identified herein as Exhibit 6 and also as Exhibit A attached to said Gift Proposal.

"9.

"Pursuant to Sec. 2 of said Gift Proposal all of the capital stock of Lone Star Water Co. has been contributed by C. F. Alexander, Charles E. McArthur and Hilding F. Henricksen to Jerry H. Birdwell, Sr., Trustee, who holds such stock for the use and benefit of the District under the terms of said Trust Agreement and Declaration of Trust.

"10.

"After receiving such favorable tax rulings, the water properties in question were duly transferred in accordance with the terms of the Gift Proposal to Lone Star Water Co. by the individual owners, and by Lone Star Water Co. to the District as more fully set out and described under stipulation 3.

"11.

"The water system in question since its acquisition by the District has been owned and operated by the District, pursuant to the provisions of Sec. 4 of the Gift Proposal and in accordance with the terms of an Operating Agreement dated December 26, 1956 between Lone Star Water Co. and the District, herein identified as Exhibit 7, and further identified as Exhibit B attached to the said Gift Proposal."

There is no evidence that similar assurances of tax immunity was procured by appellee from the State Comptroller or any authorized official of the State of Texas.

We quote further from the stipulation:

"The North Houston System is an independent operation and not dependent on the District nor is the District dependent on the North Houston System for Water, pipe lines or other prop-

erties or facilities. It is agreed, however, that there are certain services which are common to both the District and the North Houston System, such as reading meters and certain repair and maintenance work performed by the same employees of the District. No water is delivered from the District to the North Houston System nor is any water furnished by the North Houston system to the District, nor is it anticipated that this will ever be done.

"The North Houston System is a complete unit within itself. It has its own source of water, its own pipe line grid system and all other facilities necessary to conduct the business of furnishing water to its customers."

The various Exhibits introduced in evidence, some of which are referred to in the stipulations copied above, are not in the record and our knowledge of their contents is limited to a summary of them made by counsel upon their admittance. We do not quote summaries of Exhibits relating to the tax problem with the United States as we do not consider such matter of any relevance here. We do quote the following Exhibit summary:

"We offer Exhibit No. 6, also identified as such in the Stipulations, which is a true and correct copy of the Trust Agreement and Declaration of Trust, dated December 21, 1956, by and between the individual owners and Mr. Jerry H. Birdwell, Sr., Trustee, to which Mr. Ford has referred in his opening statement to the Court, and which provides in substance that all of the stock of the Lone Star Water Company would be held in trust by Mr. Birdwell for the use and benefit of District No. 58 or for such other municipal organization or corporation or for the State of Texas in the event that District No. 58 ceased to own it."

The Trustee, Mr. Birdwell, testified. His business, he stated, was primarily municipal bonds, that he was associated with Ditmar & Company, an investment banking firm; that he was employed by the Appellee District as its fiscal agent and financial advisor at the time the District was created. He stated that at present the District had outstanding about $1,110,000.00 in bonds; that since taking over the North Houston system, the District had received from it $18,000.00 for each of the years, 1957, 1958 and 1959; $8,625.00 in 1960, in 1961, $4,500.00, and would receive about the same amount in 1962. Mr. Birdwell testified that most of these revenues went to the interest and sinking fund for its bonds, and that but for such revenue the bonds could not have been issued.

The only other witness testifying was attorney, Mr. Sam P. Burford. In substance, his testimony was that private water companies which he represented, including the North Houston System, were unable to compete with municipal water companies when such private companies were annexed to a city, because of taxes; hence sale of private companies under these circumstances became necessary.

With reference to the North Houston System, he did not know what its annual revenues were, nor what portion of them was being used to pay the note in favor of its three original owners, but that the schedule of such payments was set out in one of the "instruments," presumably referring to some Exhibit not before us.

By sworn motion of appellant, filed April 23, 1963, we were advised that, "On November 29, 1962, during the pendency of the appeal of this case, the City Council of the City of Baytown, Texas, a home rule municipal corporation, passed and enacted its Ordinance No. 627–A, a copy of which is attached hereto as Exhibit A, and thereby annexed unto itself an area of land which included the entire geographic area of Harris County Water Control and Improvement District No. 58, and pursuant to Article 1182c–1, V.A.T.S., and pursuant to Section 7 of said ordinance, the Appellee, Harris County Water Control and Improve-

ment District No. 58, was abolished and the City of Baytown, Texas, is and became the successor to Harris County Water Control and Improvement District No. 58. By such action and by operation of the statute aforesaid, all of the assets and properties of such District were taken over by the City of Baytown and it assumed all debts, liabilities and obligations of such District. By such action and by operation of said statute, the City of Baytown, Texas, took over control of, and jurisdiction over, the said District, and abolished same, immediately, and as such successor became substituted for, and owns and controls the said District, and all of its interests in this litigation."

The purpose of this motion was to question the authority of attorneys for appellee to further appear in its behalf.

Appellee filed a sworn reply to this motion in which the following appears:

"Now come Harris County Eastex Oaks Water & Sewer District (hereinafter called 'Eastex District') which was as of November 29, 1962, and is now the successor of Appellee, Harris County Water Control & Improvement District No. 58 (hereinafter referred to as 'District 58') and, as such, is substitute beneficiary, owner and operator of the water distributing properties referred to in this record as the 'North Houston System; * * *."

The answer then describes the manner in which the North Houston System was transferred to Appellee District, stating that the instruments effectuating such transfer while not in the record were introduced in evidence and "are available for inspection and use" by this Court. With respect to the Deed of Trust executed in favor of Trustee Birdwell by the former private owners of the North Houston System, the motion states:

"McArthur et al also transferred all the stock of Lone Star Water Co. to Jerry H. Birdwell, Sr., as trustee for District 58, as beneficiary, or for any

other public body which should succeed to the ownership of the North Houston System, under a Declaration of Trust providing, in order to exclude any possibility that title to the system would ever revert to McArthur et al (which possibility would adversely affect the tax advantages of the arrangement) that if at any time legal counsel for the trustee should render an opinion that District 58 had no power to own and operate the system, the title to such system should revert to Lone Star Water Co. and then revest in such other public body as the trustee should appoint.

The answer then denies that the City of Baytown annexed all of the territory of Appellee District, and denies that such City succeeded to all of the assets and liabilities of such District, or that it became the successor of such District for any purpose. We quote further from appellee's answer:

"Appellees would point out that the only part of District 58 annexed by the city of Baytown was land within its corporate boundaries consisting of some 750 acres which were adjacent to the municipal limits of the city of Baytown. The water properties known as the North Houston System properties, which are the subject of this litigation, are located some seventeen miles distant from the corporate boundaries of the city of Baytown and District 58. The North Houston System is contiguous to the municipal boundaries of the city of Houston; in fact, nine tenths of the North Houston System properties have been incorporated within the municipal limits of the city of Houston.

"The original Deed of Trust securing the Notes of the McArthur interests, and the Declaration of Trust under which the stock of Lone Star Water Company was transferred to Jerry H. Birdwell, Sr., as Trustee, provided that, in the event legal counsel for the Trustee should render an opinion that

District 58 had no power to own and operate the North Houston System, the title to such System would revert to Lone Star Water Company and vest in such other public body as the Trustee should appoint. This eventuality has now taken place in consequence of the Annexation Ordinance of the City of Baytown. Attached to this reply, in a separate Exhibit Volume, are copies of the following documents:

"(1) Appointment by Jerry H. Birdwell, Sr., Trustee, of Messrs. Chapman & Cutler of Chicago as Counsel (dated December 12, 1962);

"(2) Opinion of Messrs. Chapman & Cutler to the effect that District 58 may not legally own or operate the system because of the abolishment of the District (dated December 12, 1962);

"(3) Appointment by Jerry H. Birdwell, Sr., Trustee, of Harris County Eastex Oaks Water and Sewer District as substitute beneficiary under the original Declaration of Trust (dated December 12, 1962);

"(4) Acceptance by Eastex District as substitute beneficiary of the 'North Houston System Properties' and approval by Lone Star Water Co. (dated December 12, 1962); and

"(5) Deed (dated January 11, 1963) conveying the North Houston System Properties by Lone Star Water Co. to Harris County Eastex Oaks Water & Sewer District effective November 29, 1962, the date on which Baytown annexed and abolished District 58.

From these documents it appears that Eastex District, and not the City of Baytown, is the present owner and operator of the North Houston System properties, and, moreover, that Eastex District, rather than the city of Baytown, is the proper successor of District 58 before this court."

On May 24, 1963, appellee filed a motion herein to substitute Harris County Eastex Oaks Water and Sewer District as appellee herein, wherein the following new facts are stated:

"On May 8, 1963, in Cause No. 532,-167, in the District Court of Harris County, Texas, 151st Judicial District, styled Harris County Eastex Oaks Water and Sewer District, Successors to Harris County Water Control and Improvement District No. 58 v. City of Houston, judgment was entered ordering the First City National Bank of Houston, Texas, to pay over to Harris County Eastex Oaks Water and Sewer District, as substitute beneficiary of and the present owner and operator of the North Houston System properties, the sums of $279,572.48, held by the bank in escrow pursuant to an order of the Court dated April 18, 1960, and $42,475.87, on deposit in the bank in four working capital accounts in the name of Harris County Water Control and Improvement District No. 58. This order further recites that such funds are to be turned over to the Eastex District free and clear of any and all right, title, claim or interest of the City of Baytown, the City of Houston, or the customers of the North Houston System properties from whom these funds were collected and escrowed. Of the $279,572.48 held in escrow, the Court found that $35,250.00 should be paid to the City of Baytown in discharge of operating expenses to and owing District No. 58 on November 29, 1962. Such sum was paid to the City of Baytown in accordance with the terms of said judgment. In consideration of the payment of said sum, the City of Baytown released and quitclaimed all of its interest in the North Houston System properties to the Harris County Eastex Oaks Water and Sewer District."

The tax which the Comptroller seeks authority to collect here is imposed by Art.

11.03, Title 122A, Taxation-General, V.A. C.S., from which we quote the pertinent part:

"(1) Each individual, company, corporation, or association owning, operating, managing or controlling any gas, electric light, electric power, or water works, or water and light plant, located within any incorporated town or city in this State, and used for local sale and distribution in said town or city, and charging for such gas, electric lights, electric power, or water, shall * * * pay to the Treasurer of this State an occupation tax * * *. Nothing herein shall apply to any such gas, electric light, power or water works, or water and light plant, within this State, owned and operated by any city or town, nor to any county or water improvement or conservation district."

The last sentence of the above quotation is relied upon by appellee to exempt it from the payment of taxes here involved. It also seeks an exempt status under the following Texas constitutional and statutory provisions:

Art. VIII, Sec. I, Tex.Const., which provides, in part, that, "All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed * * *. It [Legislature] may also impose occupation taxes, both upon natural persons and upon corporations, other than municipal * * *."

Art. VIII, Sec. 2, of the Texas Constitution, which provides, in part, that the "* * * legislature may, by general laws, exempt from taxation public property used for public purposes * * *."

Art. 7150, V.A.C.S., which provides, in part, that "The following property shall be exempt from taxation, towit: * * *. 4. All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof * * *."

No one could, or does deny, that appellee is a political subdivision of this State. Art. XVI, Sec. 59, Tex.Const.

The question presented is, as we view it, whether or not the property of the North Houston System is property "belonging exclusively" to appellee, under Art. 7150, or whether or not it is property "owned and operated" by it under Art. 11.03, Title 122A.

This very question was presented but not decided in Harris County Water Control & Improvement District No. 58 v. City of Houston, 357 S.W.2d 789, writ ref., n. r. e., Houston Civil Appeals. The appellant there is the appellee here. The Court in that case, under the identical facts before us, held that the City of Houston had authority to regulate the rates of the North Houston System after its partial annexation to the City of Houston as to customers served within the City.

We do not know the exact legal reason the Court based this holding on but we quote from that opinion because of its persuasiveness upon us in reaching the conclusion made by us in this case. First, we take advantage of that Court's summary of certain statutory powers which appellee there and here invokes:

"Article 7880-48, relied on by the District, provides in substance that the District shall have full power to construct all plants, works and improvements necessary to the purpose for which it is organized and incident thereto. It also provides the District may construct works and improvements for the purpose of supplying water for municipal uses, domestic use, power and commercial purposes and all other beneficial uses. Section 125 of the same article, in dealing with the right of eminent domain, authorizes the acquisition of land for construction of plants for purposes for which the District was formed. Such land may be either within or without the District. It also authorizes the District to contract for the

use of its waters, power or other facilities or service within or without the District. Section 106 of said article gives the Board of Directors the right to fix rates to be charged by the District. So does Sec. 3a."

The Court then made these observations:

"We are of the view, however, that the statutes do not authorize the District to roam at large throughout the State and distribute water wherever it wishes without regard to limitations placed on it by statute. We are of the view that considering all of the provisions of Article 7880, V.A.T.S., there are some limitations imposed.

"Article 7880, Sec. 4, in effect contemplates and provides for geographical limits. It provides a district may include the area of any county or counties or a part thereof including towns, villages and municipal corporations. Further the lands in a district need not be contiguous but if they are not, each segregated area must cast a majority vote before it may be included in the district. Section 10 provides that a majority in number of owners of title to the land and of the value of the land to be included in a district must sign the petition for a district. Section 11 requires that the petition designate the boundaries of the district. Sections 75, 75a, 75b and 75c all deal with addition of land to a district by making such land a part of the district. Section 138 authorizes the sale of surplus waters to others, but it is expressly stated it is the duty of the district to protect the lands within the district with an adequate supply of water for the purpose for which it was organized. Too, it was to protect the supply of water for municipal purposes within the district.

"[4] The effect of these statutory enactments, when considered as a whole, is not to authorize a water control and improvement district to do as appellant District here has done. It

has acquired a water distribution system 22 miles outside its boundaries and the water distributed is from a source wholly outside its boundaries, and there is no use of such water within its boundaries. In other words, it is a completely autonomous system. We should note for the sake of accuracy that the District receives at least a $1500.00 per month operating fee. We do not think this legally material here. While appellant District stresses the authority conferred by statute to sell water inside or outside its limits and to exercise the right of eminent domain within or without its limits, we do not feel such authorizes the situation we have before us. * * * We have a case where the source of the water is wholly unconnected with the limits of the district and distribution is in an area wholly unconnected with and outside the limits of the district. This act by appellant is beyond its authority and ultra vires."

The Court found fault with the manner in which the City of Houston enacted the rate ordinance before it but it expressly held that "the City does have jurisdiction * * * to fix the rates to be charged by the District for water served its customers in the City."

It seems to us that if appellee actually and legally owned the North Houston System it would continue to have statutory authority to regulate water rates until divested of that authority in a lawful manner.

It is to be noted that Art. 1182c–1, V.A. C.S., regulating the annexation of all or parts of water control and improvement or supply districts by cities and towns was not in effect when the City of Houston partially annexed properties of the North Houston System which the District here claims to own. See Acts 1957 Leg., p. 348, Ch. 161. Section 1 of this Act provides, in part, that, "Such cities shall succeed to the powers, duties, assets, and obligations of

such district or districts in the manner and to the extent hereinafter provided." Section 2 of the Act provides, in part, that in case all the territory within a district is annexed the City shall "take over all properties and assets." In case less than all the territory of the district is annexed, contracts between the district and the city are authorized.

We cite these provisions of the law as demonstrating the disposition which now must be made of the assets of a water district upon its dissolution by annexation by a city or town.

The effect of the instruments involved in this case respecting the North Houston System is that neither the City of Houston, in which the system is now principally located, nor the District (appellee), nor the City of Baytown, which annexed the Appellee District, has or had any control over the disposition of the properties of the North Houston System. This control was vested in a trustee created by private individuals, and for their benefit.

In Legion Clubhouse v. City of Madison, 248 Wis. 380, 21 N.W.2d 668, the Supreme Court of Wisconsin stated: " 'Taxation is the rule, and exemption the exception.' * * * The word 'owned' as found and used in our exemption statutes is to be taken and understood to be used, in its ordinary sense, calling for proprietorship of the title to the property, not a mere privilege or right to use it."

Under the documents before us, it is clear that Appellee District had the right, or rather duty, to use or operate the properties of the North Houston System, and for this it was paid a "fee." This arrangement is contrary to the conception of ownership. An owner operates his property to pay its expenses, debts and in the hope of reaping a profit.

We believe the judgment of the District Court of Harris County (May 8, 1963, described above) is proof of non-ownership by appellee of the North Houston System. Of the $321,000.00 held in escrow as funds accruing from the operation of this System the Appellee District received $35,250.00 as "operating expenses;" the City of Baytown received nothing; the City of Houston received nothing; resident customers of the System received nothing; the remainder was awarded Harris County Eastex Oaks Water and Sewer District.

We are not informed about the value of the North Houston System, nor the reasonableness of the price which the three private owners received from their own corporation, in the form of a note, for the "sale" of this property. Certainly this transaction was not at "arm's length." Hence, we cannot say that this plan, if effective, is a fool proof scheme by which all the profit from the North Houston System could be enjoyed, in perpetuity, by the owners, their heirs and assigns of the note against it, tax free. We can say that such could be the case.

It is our opinion that appellee is not and was not the owner of the North Houston System within the meaning of the tax exemption provisions of our Constitution and statutes above cited.[1]

We wish to emphasize the complete separation of the North Houston System from the Appellee District, both physically and in their legal structures. Each unit is complete within itself. Each has its own water supply, its own distribution system; neither furnishes water to the other, nor does either use the facilities of the other. The Appellee District has no governmental authority which it may exercise over persons or property in the North Houston System. It may not tax the property in the area served by the North Houston System, nor

1. Art. 4411, V.A.C.S. prohibits the Attorney General from making any admission in suits in which the State is a party, prejudicial to the State. Hence, the stipulations herein as to ownership may not be used to impeach this finding, or legal conclusion, which we make from the evidence.

**842**

may the residents in such area hold office in the District or vote in elections held by the District.

To hold, under the facts of this case, that the North Houston System is public property used for public purposes would in our opinion, pervert the meaning of these phrases. We cannot so hold.

The judgment of the Trial Court is reversed and judgment is here rendered declaring appellee liable for payment of taxes imposed by Art. 11.03, Ch. 11, Title 122A, Taxation-General, Vol. 20A, V.A.C.S., subsequent to its enactment, and for taxes imposed under such statute as it read prior to its amendment in 1959, on water sold through the North Houston System.

Reversed and rendered.