

# The Attorney General of Texas

January 21, 1982

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Chris Victor Semos
Chairman
House Committee on Business and
    Industry
Capitol Building
Austin, Texas    78711

Opinion No. MW-430

Re: Whether hospital project is subject to ad valorem tax

Dear Representative Semos:

The Grand Prairie Community Hospital, a hospital authority organized under article 4437e, V.T.C.S., the Hospital Authority Act, plans to construct a hospital project consisting of an office building and parking lot immediately adjacent to the presently existing hospital facility and to lease or sell that office space as condominiums to doctors practicing therein. You ask whether the project will be subject to ad valorem taxation levied against the hospital authority if the revenue which it generates through rental or sale agreements is sufficient to show a profit, even though such profit will either be placed in the general funds of the hospital authority or be used for the continued improvement, expansion and development of the office building. We do not understand you to be asking whether a lessee or a purchaser will be subject to ad valorem taxation in the situation you describe.

The hospital authority is empowered to construct hospital projects defined as follows:

> 'Hospital project' means and includes any real, personal, or mixed property, or any interest therein, the... constructing... of which is found by the governing body of an issuer to be required or necessary for medical care, research, training, and teaching, any one or all.... Without limiting the generality of the foregoing, and when found by the governing body of an issuer to be so required, necessary, or convenient 'hospital project' shall include the following:
>
> ...
>
> (4) any structure suitable for use as a support facility related to a hospital project such as an

> office building, parking lot or building, or
> maintenance, safety, or utility facility, and
> related equipment.

V.T.C.S. art. 4437e-2 §3(g). See also V.T.C.S. art. 4437e, §§1, 3, 6.
Clearly an office building and parking lot such as you describe, when
found to be "required, necessary, or convenient" by the governing body
of the authority would fall within the definition of "hospital
project" as set out above.

Senate Bill No. 1067, amending article 4437e-1, V.T.C.S.,
authorizes the governing body of any hospital authority created
pursuant to the Hospital Authority Act to lease or to sell to any
person any hospital, or part thereof, owned by the authority. Acts
1981, 67th Leg., ch. 583, §5 at 2363. It amends section 14 of the
Hospital Authority Act to provide that the hospital should not be
operated with a view to generating a private profit, but that, in any
event, it must be operated to generate sufficient revenue to pay all
expenses and all indebtedness incurred by the facility. Acts 1981,
67th Leg., ch. 583, §4 at 2362. And finally, section 16 of article
4437e, V.T.C.S., provides that since the property owned by the
authority will be held for public purposes only and will be devoted
exclusively to the use and benefit of the public, it shall be exempt
from all forms of taxation. You ask whether the authority will be
subject to ad valorem taxation if it leases or sells the
above-described office space and parking lot as it is empowered by
statute to do.

Article XI, section 9 of the Texas Constitution provides in
pertinent part the following:

> The property of counties, cities and towns, owned
> and held only for public purposes, such as public
> buildings and the sites therefor, ...and all other
> property devoted exclusively to the use and
> benefit of the public shall be exempt from...
> taxation....

Article VIII, section 2 of the Texas Constitution provides in
pertinent part the following: "[T]he Legislature may, by general
laws, exempt from taxation public property used for public
purposes...." Article VIII, section 1 of the Texas Constitution sets
forth the following in pertinent part: "All real property and
tangible personal property in this state, whether owned by natural
persons or corporations, other than municipal, shall be taxed in
proportion to its value, which shall be ascertained as may be provided
by law."

Property of a political subdivision which would otherwise qualify
for exemption from ad valorem taxation under one of the foregoing
constitutional provisions will not lose its tax-exempt status merely
because a charge is made for use of the property or a profit is
generated thereby provided the charges are incident to its use by the

public and the proceeds inure to the benefit of the political subdivision. Lower Colorado River Authority v. Chemical Bank and Trust Company, 190 S.W.2d 48, 50 (Tex. 1945); A & M Consolidated Independent School District v. City of Bryan, 184 S.W.2d 914, 915-16 (Tex. 1945). See also City of Beaumont v. Fertitta, 415 S.W.2d 902, 915 (Tex. 1967) (Walker, J., dissenting); Galveston Wharf Company v. City of Galveston, 63 Tex. 14 (1884); Cf. Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926 (Tex. Comm'n App. 1933); City of Dallas v. Smith, 107 S.W.2d 872 (Tex. 1937); City of Palestine v. Missouri-Pacific Lines Hospital Association, 99 S.W.2d 311 (Tex. Civ. App. - Amarillo 1936, writ ref'd) (cases involved not political subdivisions but rather institutions of purely public charity).

Our inquiry, however, does not end here. In your letter requesting our opinion you state: "Offices would be leased and/or office space would be sold on a 'condominium theory' to doctors including specialists who would also be using the hospital facility for the care and treatment of their patients." The office space leased or sold to doctors would then be subject to private use and control. We must first address the issue whether public property not used for public purposes or not used exclusively for public purposes will be denied tax-exempt status by virtue thereof.

It has been suggested that Fertitta is controlling. This case held that property owned by the city, though leased to private persons for the purpose of carrying on a private commercial enterprise, was exempt from ad valorem taxation regardless of the fact that the use to which the property was put was not public.

The court in Fertitta departed from the method of constitutional analysis which courts had traditionally invoked when the issue was whether property owned by a political subdivision was entitled to receive tax-exempt status. City of Beaumont v. Fertitta, supra (see dissenting opinion). Prior to Fertitta, courts had always looked to whether the property was owned by a political subdivision and whether it was used or held for a public purpose, while assuming that, if it were not so used, it would be taxable under article VIII, sections 1 and 2 of the Texas Constitution. See A & M Consolidated Independent School District v. City of Bryan, supra; Daugherty v. Thompson, 9 S.W. 99 (Tex. 1888); City of Abilene v. State, 113 S.W.2d 631 (Tex. Civ. App. - Eastland 1937, writ dism'd) (holding disapproved of on other grounds in Fertitta). The court in Fertitta departed from the traditional mode of constitutional analysis in declaring that the constitution does not require that property owned by a municipality but not used for a public purpose be taxed. It only requires that private property held by natural persons or private corporations be taxed. Therefore, since the constitution does not require municipal property to be taxed, the legislature needs no constitutional authority to exempt it. It chose to do so in the now-repealed article 7145, V.T.C.S. This statute required that all property, except that which is expressly exempted, be taxed. The now-repealed article 7150, V.T.C.S., exempted "[a]ll property, whether real or personal, belonging exclusively to this State, or any political subdivision

thereof, or the United States...."  Public ownership was enough, no public use was required.

The dissent in _Fertitta_ readily pointed out that this constitutional and statutory argument is novel; indeed, earlier decisions which went to great length discussing the holding and using requirements of public property make sense only if one accepts the claim that the constitution requires _all_ property to be taxed unless it is specifically exempted pursuant to a constitutional provision, that public property, in order that it be deemed tax-exempt, must fall within the limitations set forth in article VIII, section 2 or article XI, section 9 of the Texas Constitution.  No other case has explicitly employed such an analysis.  Moreover, the Texas Supreme Court clearly narrowed the reach of _Fertitta_ in _Leander Independent School District v. Cedar Park Water Supply Corporation_, 479 S.W.2d 908, 911 (Tex. 1972) and in _Satterlee v. Gulf Coast Waste Disposal Authority_, 576 S.W.2d 773 (Tex. 1978).

_Leander_ did not concern property owned by a political subdivision leased to a private person for the purpose of a private commercial enterprise; rather, it concerned property owned by a private person but used for public purposes.  In overturning a lower court judgment sustaining the tax-exempt status of such property, the court specifically held that property, to be exempt, must be used for public purposes.  The court in _Leander_ did not, however, explicitly reject the mode of constitutional analysis employed in _Fertitta_.  In _Satterlee_, the court reaffirmed the requirement that there be a public use before property owned by a political subdivision be declared tax-exempt.

If the traditional method of analysis were applied to the instant situation, a court would find that since the property of the political subdivision is used for private purposes, it should not receive tax-exempt status.  If the method of analysis employed in _Fertitta_ were employed instead, a court would also find that the property should not receive tax-exempt status.  In _Fertitta_, the court looked to the now-repealed article 7150, V.T.C.S., which did not require that property owned by a political subdivision be used for public purposes in order that it be tax-exempt; mere public ownership was enough.  However, the statute which replaced article 7150, V.T.C.S., section 11.11(a) of the Property Tax Code does require that property owned by a political subdivision be exempt from ad valorem taxation only if it is used for public purposes.  Therefore, regardless of which method of analysis a court would employ, it is clear that a requirement that the property be used for public purposes would be imposed.  The final issue is whether that public use must be exclusive or whether a private person may permissibly be incidentally benefitted.

In _Satterlee_, the court declared to be taxable real property which was conveyed to a political subdivision.  The court held that the instruments did not convey interest in the property sufficient to make the ownership "public" for purposes of article VIII, sections 1 and 2.  On motion for rehearing, the waste disposal authority urged

that the property still be held tax-exempt under that provision of article XI, section 9 which purports to exempt "...all other property devoted exclusively to the use and benefit of the public...." The court disagreed and, citing Lower Colorado River Authority and Daugherty, declared that the property must be held only for public purposes and devoted exclusively to the use and benefit of the public. On the basis of this language, we conclude that, by the arrangement here contemplated, the property would lose its tax exempt status because it is not used exclusively for the benefit of the public.

With respect to office space which the authority proposes to sell "on a 'condominium theory'" to doctors, the foregoing argument is relevant. There is, moreover, an additional argument. Both article VIII, section 2 and article XI section 9 of the Texas Constitution speak of property owned by a political subdivision. Even if office space which was sold as condominiums were to meet the "public use" test, it is highly unlikely that it would meet the ownership test. In Calvert v. Harris County Water Control and Improvement District No. 58, 368 S.W.2d 833 (Tex. Civ. App. - Austin 1963, writ ref'd n.r.e.), the court held that a special district was not, within the meaning of article VIII, sections 1 and 2 of the Texas Constitution, the owner of what had been a privately-owned water supply system. The special district was not empowered to exercise any control over disposition of the property of the system, though legal title to the property vested in the district; the control was vested in a trustee created by private individuals, and for their benefit. In Satterlee, the Texas Supreme Court held that a state conservation and reclamation district did not acquire exclusive ownership of property on which an industrial waste treatment center was constructed where the special warranty deed conveyed the property to the district only for "so long as" the property was used for industrial waste treatment and restricted the ability of the district to subsequently convey such property. The supreme court held that such a conveyance created a determinable fee, that exclusive ownership and control of the property had not vested in the district, and that the property was not exempt from ad valorem taxation. Though no Texas court has yet explicitly so held, we conclude that a court would probably declare that, in the event that a political subdivision sold office space as a condominium, the political subdivision would no longer "own" the property in the sense required by article VIII, section 2 or article XI, section 9 of the Texas Constitution, regardless of the use of such office space.

## S U M M A R Y

The mere fact that a charge is made for the use of property owned by a political subdivision or a profit is generated thereby will not cause such property to be denied ad valorem tax-exempt status. Property owned by a political subdivision, but leased to a private person for the purpose of engaging in a private commercial enterprise, would not be entitled to exemption from ad valorem taxation under article VIII,

section 2 or article XI, section 9 of the Texas Constitution. Property owned by a political subdivision, but sold as a condominium to a private person, would not be entitled to exemption from ad valorem taxation, regardless of the use of such property, because it is not "owned" by a political subdivision within the meaning of article VIII, section 2 or article XI, section 9 of the Texas Constitution.

Very truly yours,

MARK    WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Rick Gilpin
Jim Moellinger